UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

UNITED STATES OF AMERICA,
    Plaintiff,

vs.

CLIFTON ROBINSON,
    Defendant.

No. 16 Cr. 10053 (MMM)

_____/

MOTION TO MODIFY TERM OF IMPRISONMENT UNDER 18 U.S.C. 3582(c)(1)(A)

COMES NOW Defendant, Clifton Robinson, appearing pro se, respectfully submits this Motion to Modify his term of imprisonment and appoint counsel, pursuant to 18 U.S.C. 3582(c)(1)(A) and Rule 44(a) of the Federal Rules of Criminal Procedure. For the reasons stated hereinafter this motion should be greanted.

RELEVANT BACKROUND AND FACTS

Defent was convicted after a bench trial on charges of conspiracy to defraud the Government, wire fraud, mail fraud and aggravated identity theft. All charged in a sixteen-count Superseding Indictment returned by a grand jury sitting in the Central District of Illinois. The Defendant was sentenced to 99 months of imprisonment.

ARGUMENT

Defendant has earned only one year of First Step Act (FSA) credits and is being denied usage of the other 8 months that he is owed, which would have ended his sentence on June 1, 2022, see all exhibits. The BOP is clearly above the law. Mr. Robinson has filed a civil suit against the institution and his case manager is now currently suspended for "racial misconduct."

Mr. Robinson signed his halfway house paperwork in April 2022 after reaching out to the Regional Branch of the BOP, forcing staff at FCI Milan to do their job. Mr. Robinson was sentenced to over 8 years in prison and per BOP policy, he should receive 8 months of halfway house time, which he did not receive. The BOP is not awarding FSA Time credits and unlawfully detaining black prisoners such as ther defendant. When asking for assistance from the new assistant Warden, he was told to, "Write to your Congressmen and Senate and ask for a Compassionate Release." In addition to this act the BOP has put on, the defendant's mother is ill and has been in the ICU since 2-10-22. While she is fighting for her life, the Defendant's Constitutional Rights and Civil Rights are being violated just by holding him here. The defendant's time is up. Probation has the defendant's release plan and approved the address. Her phone number is 773-397-3653.

The BOP's view that they are above the law and Congress moves to slow to assist- this is the defendant's extraordinary and compelling reasons to grant this motion.

Respectfully,

# EXHIBITS

BP-A0434  
JUNE 10  
**U.S. DEPARTMENT OF JUSTICE**                   COMMUNITY BASED PROGRAM AGREEMENT   CDFRM                   FEDERAL BUREAU OF PRISONS

I, ROBINSON, CLIFTON, Register Number, 21794-026, hereby authorize employers of the Department of Justice and employees of any facility contracting with the Department of Justice to release any or all of the contents of information in my inmate central file to educational facilities, social agencies, prospective employees, etc., for the purpose of assisting in all phases of community programming and release planning. I also authorize the above persons to advise prospective employers that I am currently in the custody of the U.S. Attorney General serving sentence or under the supervision of the U.S. Parole Commission or U.S. Probation Office. This consent will remain in effect until my release from supervision or until revoked in writing by me. Revocation of this authorization may result in my removal from a community-based correctional program.

I understand that while a resident of a residential reentry center or work release program I will be expected to contribute to the cost of my residence through payments to the contractor and I agree to make such payments. I understand that failure to make payments may result in my removal from a community-based program (Not applicable for MINT referrals).

I understand that urinalysis or other Bureau of Prisons authorized testing to detect unauthorized drug or alcohol use may be required as a condition of residence in a residential reentry center or work release program, and if required, I agree to submit to such testing. I understand that ingestion of poppy seed products may result in positive test results for unauthorized drug use and is therefore prohibited.

I understand that no non-emergency medical care may be provided to me at the Bureau's expense without prior authorization of the BOP. I understand that, as part of my transition to release, I am expected to assume increased responsibility for my health care while I am a resident of a community-based correctional program.

I also understand that I may be transferred by the BOP to a suitable institution or facility at the Bureau's option for medical care should the Government deem it necessary.

I understand that I may be required to undergo clinical assessment and may be required to participate in treatment, e.g. mental health/psychiatric treatment, substance abuse treatment, sex offender treatment, recommended as a result of the assessment. I understand that failure to abide by treatment program recommendations may result in my return to a secure facility.

I understand that I may be required to abide by the conditions of supervision as imposed by the sentencing court or the U.S. Parole Commission, including the payments of fines and restitution and to follow the instructions of the probation officer as if on supervision.

I understand that upon arrival at the residential reentry center I may be initially placed in the restrictive Community Corrections Component for a period of orientation. In this component, I will be expected to remain at the RRC unless authorized to leave for employment or other authorized program purposes. Additionally, I understand that social visits and recreational/leisure activities will be confined to the RRC.

I understand that while a resident of a residential reentry center or work release program I will be required to abide by the rules and regulations promulgated by such program.

For MINT referrals, I understand that I or the guardian shall assume total financial responsibility for my child's care while I am a resident of a RRC. Should I or the guardian be unable or unwilling to bear my child's financial cost, I will be transferred back to my parent institution immediately. I understand that no financial support will be provided to my child by the Bureau of Prisons.

PART II

In the event that I am approved for Home Detention, I agree to abide by the following conditions related to my legal participation in Home Detention.

I understand that my participation in Home Detention will be an alternative to placement in a RRC for no more than the last six months or 10% of my sentence, whichever is less. I am aware that I will legally remain in the custody of the Bureau of Prisons and/or the U.S. Attorney General and that failure to remain at the required locations may result in disciplinary action and/or prosecution for escape.

I agree to report to my assigned probation officer or the contractor's facility immediately upon reaching my release destination.

I understand that if I decline to participate in the recommended Home Detention program I may face administrative reassignment out of the residential reentry program.

I agree that during the Home Detention period, I will remain at my place of residence, except for employment, unless I am given permission to do otherwise. I also understand that I will be required to pay the cost of the program based on my ability to pay.

I also agree to maintain a telephone at my place of residence without "call forwarding," or "three-way calling" for this period. I also agree that if instructed to do so, as a condition of Home Detention, I will not have access to a computer with a modem or other device for accessing the internet. I also agree that if my confinement is to be electronically monitored, I will wear any electronic monitoring device required, follow procedures specified, and comply with any telephone and computer access restrictions as they apply to the monitoring device requirements.

ROBINSON, CLIFTON                                                         04/26/2022  
Inmate's Printed Name and Signature                                       Date

R. Lea / Case Manager                                                     04/26/2022  
Witness' Printed Name and Signature                                       Date

Record Copy - CCM; Copy - CCM; Copy - Central File

PDF                              Prescribed by P7310                    Repl.   BP-S434.07  dtd DEC 98

```
MILH2  540*23 *           SENTENCE MONITORING          *    07-20-2022
PAGE 001       *   -      COMPUTATION DATA             *    11:23:56
                          AS OF 07-20-2022

REGNO..: 21794-026 NAME: ROBINSON, CLIFTON


FBI NO............: 558677RA8          DATE OF BIRTH: 02-16-1974  AGE:  48
ARS1..............: MIL/A-DES
UNIT..............: F UNIT              QUARTERS.....: F14-011L
DETAINERS.........: NO                  NOTIFICATIONS: NO

FSA ELIGIBILITY STATUS IS: ELIGIBLE

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.

HOME DETENTION ELIGIBILITY DATE....: 08-21-2022

FINAL STATUTORY RELEASE FOR INMATE.: 02-21-2024 VIA GCT REL
        WITH APPLIED FSA CREDITS.: 365  DAYS
THE INMATE IS PROJECTED FOR RELEASE: 02-21-2023 VIA FSA REL

REMARKS........: 03-02-2022 PRD ADJ DUE TO FSA APPLIED R/DJC

               RELEASE AUDIT COMPLETED ON 03-25-2022 BY DSCC
-----------------------CURRENT JUDGMENT/WARRANT NO: 010 -----------------------
COURT OF JURISDICTION.............: ILLINOIS, CENTRAL DISTRICT
DOCKET NUMBER.....................: 16-CR-10053-001
JUDGE.............................: MIHM
DATE SENTENCED/PROBATION IMPOSED: 10-30-2018
DATE COMMITTED....................: 12-11-2018
HOW COMMITTED.....................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED.................: NO

              FELONY ASSESS   MISDMNR ASSESS   FINES         COSTS
NON-COMMITTED.:  $1,600.00     $00.00          $00.00        $00.00

RESTITUTION...:  PROPERTY:  NO   SERVICES:  NO      AMOUNT:  $1,214,367.60




G0002       MORE PAGES TO FOLLOW . . .
```

TRULINCS 21794026 - ROBINSON, CLIFTON - Unit: MIL-F-D

----------------------------------------------------------------------

FROM: Bonner, Khyree
TO: 21794026
SUBJECT: Federal Legal News 8-1-22
DATE: 08/01/2022 10:06:14 PM

New Report Rips DOJ Implementation of First Step Credits; Guards Union President Joins Criticism of Bureau's Failures; Union Head Cites Carswell Chaos; Health Care in the Spotlight; New Group of Senators Continue Investigations of Federal Prisons and Former Director; Concepcion Can be Cited in Most Circuits for Sentence Relief; Sentencing Commission Statistics Support Argument That Elderly Can be Released Without Risk; Bruen Decision May Provide Vehicle to Attack Non-Violent Federal Firearms Convictions and Enhancements; New Cannabis Bill Filed in Senate; COVID Re-Infections Will Continue

by Derek Gilna, Director of Research

From NBC News: "Staffing shortages and deficient training leave First Step Act floundering, federal prison employees say: 'This is the biggest failure I've seen of something that's a law. It's pathetic,' one prison counselor said. Staff members at some of the country's largest federal prisons said carrying out the First Step Ac (FSA), a bipartisan law signed in 2018 by then-President Donald Trump, has been taxing, if not impossible. "It's not going at all,"Joe Rojas, the literacy coordinator at the Coleman Federal Corrections Complex in Florida, said of the FSA's implementation. "I'm the education department, and we're never open, and if we are, it's barely," said Rojas, who is also the president of the American Federation of Government Employees' Local 506 at Coleman. "Most of us are augmented," he said. "There's no programming. If there's no programming, you can't do the First Step Act."

There is ZERO evidence that this will change anytime soon, despite some harried staff's representations and false prison rumors to the contrary. There is no harm in starting administrative remedies NOW to get that year of credit, paving the way for litigation if necessary.

The union president at FMC Carswell prison in Fort Worth laid out accusations of "corruption, misconduct and malfeasance" at the federal women's prison in a letter sent to state and federal leaders. Jennifer Howard, union president at Carswell, said upper management at the prison covers up reports of misconduct by supervisors, retaliates against staff who file complaints and violates federal law by not honoring contract negotiations, and requested a congressional inquiry. Waseca, Aliceville, Alderson, Mariana, and others could also use similar inquiries.

In the meantime, the scandal of substandard prison health care is also gaining major attention, as more complaints clog the inboxes of Congressmen and Senators. Prisoners with chronic health problems should regularly obtain their medical records to see if staff have failed to properly document your health challenges, or understated the seriousness of your condition.

At his recent subpoenaed Senate testimony, the outgoing director, who attempted to deflect blame for his agency's numerous failures, was blistered by a new group of Senators not normally associated with justice reform. "It's almost willful ignorance, and that's what I find disturbing," Senator Ron Johnson said of Carvajal's reluctance to own his mistakes. "Don't want to know what's happening below me. Don't want to hear about rapes. Don't want to hear about suicides."

Added Georgia Senator Jon Ossoff: "It's a disgrace. And for the answer to be other people deal with that. I got the report. I don't remember. It's completely unacceptable." Afterward, Carvajal ran from reporters seeking to speak with him about his testimony. The outgoing director, who's declined nearly all interview requests since taking office in 2020, ducked into a freight elevator with aides before bolting down a stairwell once they realized reporters had followed them in. The hearing focused on years of misconduct and abuse at a federal penitentiary in Atlanta, but the problems unearthed there speak to larger systemic issues, such as severe staffing shortages, deficient health care and barely edible food.

Officials at one prison, FCI Fairton, are reportedly tampering with a drug-treatment program that participants say has been helpful in dealing with their addiction issues. A high percentage of drug prisoners have issues which pave the way to prisons and feel that limiting these programs puts them at further risk of returning to prison after release.

Concepcion v. US, No. 20-1650 (S. Ct. June 27, 2022) should have completely resolved a circuit split surrounding what factors can serve as the basis for compassionate release. Many believe non-retroactive changes in sentencing law can potentially provide the basis for compassion release because nothing in the text of § 3582(c)(1)(a) supports the contention that non-retroactive changes cannot ever constitute "extraordinary and compelling reasons" to allow a sentence reduction. Though the Third, Sixth, Seventh and Eighth Circuits have held otherwise, language from Concepcion would seem to undercut extra-textual limits (not cited in law) on sentencing or sentence-modification considerations.

Federal courts historically have exercised this broad discretion to consider all relevant information at an initial sentencing hearing, consistent with their responsibility to sentence the whole person before them. That discretion also carries forward to later proceedings that may modify an original sentence. Such discretion is bounded only when Congress or the Constitution expressly limits the type of information a district court may consider in modifying a sentence.

Age matters when it comes to recidivism. According to a 2017 USSC report, about 65 percent of federal prisoners who

Clifton Roberts
21794-026
FEDERAL CORRECTIONAL INSTITUTION
P.O. BOX 1000
MILAN, MICHIGAN 48160

METROPLE
4 AUG 202[?]

Federal Court house
100 N.E. Monroe st,
Peoria, Ill.
61602

61602-100399